Filed 2/7/25  P. v. Newman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JAMES ANDREW NEWMAN,<br><br>        Defendant and Appellant. | F087828<br><br>(Super. Ct. No. CRM007954A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

# **INTRODUCTION**

In 2011, appellant James Andrew Newman was convicted by jury of four counts of first degree robbery (Pen. Code,[1] § 211, counts 1-4), one count of false imprisonment (§ 236, count 5), and one count of receipt of stolen property (§ 496, subd. (a), count 6). With respect to counts 1 through 4, the jury found true a firearm use enhancement allegation (§ 12022.53, subd. (b)). Following a bifurcated proceeding, the trial court found that Newman had suffered prior convictions under the Three Strikes law (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)) and had served prior prison terms (§ 667.5, subd. (b)). The trial court sentenced Newman to an indeterminate prison term of 25 years to life, plus a determinate term of 12 years.

In 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (SB 136) amended section 667.5, restricting the application of prior prison term enhancements except where a prior conviction is for a sexually violent offense. (Stats 2019, ch. 590, § 3.)

Effective January 1, 2022, Senate Bill No. 483 (2021-2022 Reg. Sess.) (SB 483) added former section 1172.1, now section 1172.75 to the Penal Code. (Stats. 2021, ch. 728.) Section 1172.75 made SB 136's changes to the law fully retroactive to "all persons currently serving a term of incarceration … for these repealed sentence enhancements." (Stats. 2021, ch. 728, § 3.)

On March 25, 2024, the trial court recalled Newman's sentence under section 1172.75, subdivision (b), struck his prior prison term enhancements, and resentenced him to a prison term of 25 years to life plus 10 years. The trial court also imposed a $10,000 restitution fine (§ 1202.45, subd. (b)), a $240 court operations assessment (§ 1465.8), and a $180 court facilities assessment (Gov. Code, § 70373).

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

Newman raises two claims on appeal. First, he contends that the trial court abused its discretion by declining to strike his prior strike convictions. Second, Newman contends that pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court abused its discretion by imposing a $10,000 restitution fine, a $240 court operations assessment, and a $180 court facilities assessment (Gov. Code, § 70373), despite his inability to pay. Finding his contentions meritless, we affirm.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

*Newman's Underlying Conviction*

The following statement of facts were derived from this court's prior opinion in *People v. Newman* (Nov. 2, 2012, F063422) [nonpub. opn.]):

> "On February 2, 2010, Newman and several other suspects forced their way into a residence in Merced County and tied up several residents with zip ties and duct tape. One victim was struck in the head with a gun. Newman and his confederates also ransacked the house and took $1,300 in cash, other items valued at almost $4,000, and a truck. Newman was arrested later that day while driving the stolen truck and in possession of numerous items that were taken from the residence."

<u>**DISCUSSION**</u>

**I. The Trial Court's Refusal to Strike Newman's Prior Strikes**

Newman contends that the trial court abused its discretion by declining to strike his prior strike convictions. We disagree.

**A. Background**

Prior to Newman's resentencing hearing, the parties submitted sentencing briefs to the court. The parties' briefs and the probation officer's report demonstrate the following:

### 1. *Newman's Criminal History*

At the time of his original conviction, Newman had suffered two prior juvenile adjudications and eight prior strike convictions as an adult:

- In 1986, Newman suffered a juvenile adjudication for first degree burglary with the use of a weapon. He was discharged from the California Youth Authority in January 1990.

- In August 1990, he was convicted of five counts of robbery, with a firearm use enhancement (§ 12022.5), for which he was sentenced to 18 years eight months in state prison.

- In September 1990, Newman was convicted of escaping from jail.

- In January 2003, he was convicted of misdemeanor assault with a deadly weapon.

- In October 2005, Newman was convicted of assault by a prisoner, and possession of a weapon by a prisoner. He was sentenced to a prison term of five years.

- In June 2011, he was convicted of the instant offenses: four counts of first degree robbery with a firearm use enhancement, one count of false imprisonment, and one count of receipt of stolen property.

### 2. *Newman's Sentencing Brief*

According to a probation officer's report received by the court on August 16, 2011, Newman had been using drugs and drinking alcohol since he was 13 years old. During this time, Newman admitted to smoking marijuana and snorting methamphetamine daily.

In a sentencing memorandum filed with the court on May 3, 2023, Newman represented that he has maintained his sobriety since 2012. Newman further described his work assignment history, which has helped him achieve new skills that will enable him to find gainful employment when he is eventually released from custody. He has also taken various classes while in prison, including, anger management, cell phone

4.

usage while in prison, and creative writing classes. Newman has had some of his poetry published and attached some of his work as exhibits to his sentencing brief.

Since transferring from Pelican Bay State Prison to the Sierra Conservation Center, Newman has begun participating in youth diversion programs and college education courses. Although he did not provide details of his post-release plans, Newman represented that his family and family members are supportive of his release from custody.

### 3. *The Trial Court's Ruling*

On March 25, 2024, the trial court issued a written ruling denying Newman's request. The trial court observed that throughout his entire adult life, Newman has never been out of custody for a significant period of time without reoffending. And, while Newman was in custody, he had repeatedly engaged in "prohibited/illegal activity, and engage[d] in violence, including stabbing another inmate."

Although Newman claimed that he has been sober since 2012, he admitted to manufacturing/fermenting alcohol while in prison in September 2013. Newman also admitted to possession of manufactured alcohol in March 2014, and he was found in possession of manufactured alcohol in November 2014 and March 2015.

In September 2015, Newman attacked another inmate with a manufactured weapon, stabbing him. He was found guilty of battery on an inmate with a deadly weapon. In February 2020, Newman suffered another rule violation for failing to comply with a correctional officer's orders. During this incident, he became verbally aggressive. In October 2021, Newman and another inmate engaged in a physical confrontation. Correctional officers had to use force to end the fight.

The trial court concluded that "After reviewing petitioner's criminal history, including various uses of weapons in committing violent acts, the facts of his conviction, and postconviction factors, including the disciplinary record and record of rehabilitation while incarcerated, [Newman's] age and time served have not reduced [his] risk for

future violence, and the evidence demonstrates that [he] has not changed since the original sentencing."

## B. Standard of Review

A trial court may strike a prior serious felony conviction allegation "in furtherance of justice." (§ 1385, subd. (a); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504.) When exercising its discretion, the court must consider whether the nature and circumstances of the defendant's present felonies and prior serious or violent felony convictions, and the defendant's background, character, and prospects, render the defendant "outside the [Three Strikes] scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Our Supreme Court has explained that only extraordinary circumstances justify a finding that a career criminal is outside the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*; see, e.g., *People v. Avila* (2020) 57 Cal.App.5th 1134, 1151, ["Life in prison for destroying fruit, even when done by someone with a criminal record in the course of an attempted robbery, robs recidivist sentencing of its moral foundation and renders the solemn exercise of judicial authority devoid of meaning"].) " ' "In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony*, at pp. 376-377.)

The refusal to strike a prior conviction is reviewed for an abuse of discretion. (*People v. Carmony, supra,* 33 Cal.4th at p. 375.) A court abuses its discretion when, for example, it is unaware of its discretion, or it considers impermissible factors when declining to strike a prior felony. (*Id.* at p. 378; see, e.g., *People v. Gillispie* (1997) 60 Cal.App.4th 429, 434 [impermissible factors may include consideration of the

6.

defendant's race or national origin].)  However, "[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance."  (*People v. Myers* (1999) 69 Cal.App.4th 305. 310.)

### C. Analysis

Newman maintains that the trial court abused its discretion by declining to strike his prior strike convictions.  However, nothing upon the instant record demonstrates that the court was unaware of the scope of its sentencing discretion, considered impermissible factors, or that the instant circumstances are so extraordinary that "no reasonable people could disagree that [Newman] falls outside the spirit of the three strikes scheme." (*People v. Carmony, supra,* 33 Cal.4th at p. 378.)

Outside of prison, Newman has consistently failed to remain crime free for any significant period.  Each time he has been released from prison, he has reoffended within one year, accumulating eight strike convictions, excluding his commitment offenses.  While incarcerated, Newman has engaged in violent acts, including stabbing another prisoner in 2015 and fighting another inmate in 2021.

Although Newman has made some progress toward rehabilitation while he has been in prison, the record does not support the conclusion that the trial court erred in concluding that he does not fall outside the spirit of the Three Strikes law.  (See *People v. Carmony, supra*, 33 Cal.4th at p. 378.)

Newman asserts otherwise, arguing in part that his prior strike convictions are too remote in time to warrant consideration.  However, absent evidence to the contrary, we presume that the court considered the remoteness of his prior strike convictions when determining whether to exercise its discretion to strike them.  (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [in declining to strike a prior strike, the trial court " 'is presumed to have considered all of the relevant factors in the absence of an affirmative

record to the contrary' "].)  The court ultimately concluded that striking the prior convictions was not warranted under the circumstances.  We find no abuse of discretion in this decision.

## II. Imposition of the Restitution Fine and Assessments

Newman further challenges the trial court's imposition of a $180 court facilities assessment, a $240 court operations assessment, and the maximum $10,000 restitution fine, based upon his asserted inability to pay.  He contends that the fine and assessments imposed violate due process.  (See *Dueñas, supra,* 30 Cal.App.5th at p. 1164 ["the execution of any restitution fine imposed under [section 1202.4] must be stayed unless and until the trial court holds an ability to pay hearing *and* concludes that the defendant has the present ability to pay the restitution fine"], italics added.)

The Attorney General contends that the proper analytic framework for Newman's argument is the excessive fines clause of the Eight Amendment.  We conclude that Newman has failed to demonstrate that the trial court abused its discretion under the due process clause.  Because Newman does not argue that the fine was not excessive under the Eighth Amendment, we further conclude that he has waived any such contention.

### A. Analysis

#### 1. The Restitution Fine

When the trial court imposes a felony restitution fine in an amount exceeding the $200 statutory minimum, subdivision (d) of section 1202.4 directs the court to consider the following factors:  "[T]the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime.  Those losses may include pecuniary losses to the victim or the victim's dependents as well as intangible losses, such as psychological harm caused by the crime."  The court is not required to make express findings as to these factors.  (See § 1202.4, subd. (d).)

Here, Newman was given the opportunity to demonstrate, in accordance with *Dueñas*, that he lacked the ability to pay the restitution fine. The trial court implicitly considered Newman's circumstances, including his present and future ability to earn income, and concluded that imposition of the $10,000 maximum restitution fine was warranted. We find no abuse of discretion.

There is evidence showing that Newman is physically able to work, that he receives prison wages from his current work assignment, and that he has been paying restitution to the victims for his crimes. "Prison wages range from $12 to $56 per month, depending on the prisoner's skill level," and "[t]he state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b) restitution fine." (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.) These factors belie Newman's assertion that he lacks the ability to pay the challenged court-imposed monetary obligations.

Newman contends otherwise, relying upon the following facts: (1) he was appointed counsel to represent him at the resentencing hearing based upon his status as an indigent person; (2) he is a prisoner serving a term of 25 years to life plus 10 years; and (3) it will take him over 30 years to repay the $10,000 restitution fine based upon his current prison wages. Even when a defendant is unable to pay the section 1202.4 restitution fine however the trial court does not necessarily abuse its discretion by imposing a fine exceeding the statutory minimum.

*People v. Lewis* (2009) 46 Cal.4th 1255 (*Lewis*) is instructive. There, the defendant challenged imposition of a $10,000 restitution fine, arguing that the court abused its discretion by determining that the defendant had the ability to pay the fine. (*Id.* at p. 1321.) Our Supreme court held that the defendant's potential receipt of monetary gifts from his family and friends "contemplated that [the] defendant would have funds in the future from which restitution could be paid, and thus contradicted the view that [the] defendant would be unable to pay the fine." (*Ibid.*) The court considered

9.

the defendant's inability to pay the fine, but concluded that imposition of the fine was nonetheless warranted, citing "the offenses committed by [the] defendant and the harm he caused to the victim and her children." (*Ibid*.)

*People v. Potts* (2019) 6 Cal.5th 1012 (*Potts*) is also helpful. There, our Supreme Court upheld imposition of a $10,000 restitution fine, even though the fine was imposed based upon an erroneous belief that the inmate, serving a capital sentence, would be permitted to work and earn wages while in prison. (*Id*. at p. 1055.) Our Supreme Court found that imposition of the fine was harmless beyond a reasonable doubt, explaining that the monetary burden from the restitution fine imposed may be outweighed by other considerations, including the harm caused to the victim. (*Id*. at pp. 1055-1057.) In so holding, the court rejected the defendant's assertion that a restitution fine is automatically invalid if the defendant is unable to pay it. (*Id*. at p. 1056.)

Following *Lewis* and *Potts*, we conclude that the severity and gravity of Newman's commitment offenses support the trial court's imposition of the maximum $10,000 restitution fine, despite the financial burden it may place on Newman. Newman and his accomplices committed a home invasion, taking $1,300 in cash, almost $4,000 in valuables, and a vehicle from the victims. During the offense, the victims were zip tied and duct taped, and one was struck with a firearm.[2] The potential for death or great bodily injury was significant, and the seriousness of the offense cannot be overstated. Given the egregious nature of Newman's actions and their impact on the victims, the trial court's decision to impose the maximum restitution fine was both reasonable and appropriate under the circumstances.

We further observe that imposition of the $10,000 restitution fine is consistent with the suggested total calculated using the formula set forth in subdivision (b)(2) of

---

[2] The record supports the conclusion that Newman was the culprit who pistol whipped one of the victims.

section 1202.4. Subdivision (b)(2) of section 1202.4 provides that "[i]n setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) [$300] multiplied by the number of years of imprisonment the defendant is ordered to serve [25 + 10 years], multiplied by the number of felony counts of which the defendant is convicted [5 counts]." Section 1202.4's recommended formula yields a total fine of over $52,000, far exceeding the statutory maximum of $10,000.

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in imposing the maximum $10,000 restitution fine. Newman's assertion to the contrary is unpersuasive.

## 2. *The Court Facilities and Court Operations Assessments*

Newman also challenges the trial court's imposition of a court facilities assessment (Gov. Code, § 70373) totaling $180, and a court operations assessment (§ 1465.8) totaling $240. In *People v. Son* (2020) 49 Cal.App.5th 565, a majority of this court concluded that a criminal defendant is entitled to an ability to pay hearing before the criminal conviction assessment and the court security fee may be imposed. (*Id*. at pp. 590-592, 598.) California appellate courts, including this court, remain divided on this issue. (See *Id*. at p. 599 (dis. opn. of Franson, J. [disagreeing that an ability to pay hearing is required prior to the imposition of a criminal convictions assessment or court security fee].) Because Newman received an ability to pay hearing and we find no abuse of discretion in the trial court's imposition of these assessments, we need not and do not address this split of authority.

The record does not contain sufficient evidence from which we can deduce precisely when Newman will likely satisfy his fines and fees. Considering Newman's age (56 years old), his lengthy prison sentence, his current prison wages (.55 cents/hour, and that his other court-imposed monetary obligations, we accept Newman's contention

that it will take him a prolonged period to satisfy his obligations. Nevertheless, as discussed in part II.A.1 *ante*, he does not lack the ability to pay them.

Insofar as Newman relies upon *Dueñas* in arguing otherwise, the circumstances in *Duenãs* are markedly distinguishable from his own. In *Dueñas*, the defendant, suffered from cerebral palsy and was a homeless mother of two children who survived on public assistance. Her inability to pay the fees required to reinstate her driver's license trapped her in a cycle of repeated legal violations and mounting debt. She repeatedly accrued fines and fees, and even served time in jail for driving with a suspended license. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1160-1161.)

Newman on the other hand, is actively paying his court-imposed fines and fees. Despite his financial challenges, he has managed to pay $2,000 in victim restitution from his prison wages. Further, as distinct from the defendant in *Dueñas*, Newman is not caught in an endless cycle of debt with cascading consequences, including consequences that may jeopardize his personal liberty interests. We conclude that Newman has failed to demonstrate the trial court abused its discretion in imposing the court facilities and court operations assessments.

## III.  The Recalculation of Newman's Custody Credits

Although not raised by the parties, the record further demonstrates that the trial court declined to recalculate Newman's credits for all actual days he spent in custody until the day that he was resentenced, and that the abstract of judgment does not include the date of the resentencing proceeding. As discussed further below, this task cannot be delegated to the California Department of Corrections and Rehabilitation. We will remand the matter back to the lower court for the recalculation of Newman's custody credits.

### A.  Background

At Newman's resentencing hearing, the trial court made the following comments:

"[THE COURT:]  The Court notes that as of September 9, 2011, which was the date of original sentencing, Mr. Newman was awarded 584 actual days, 86 conduct credits, for a total of 670 days.  From that date forward, the Department of Corrections has calculated credits to the present; but the Court doesn't do so.  My jurisdiction is limited only back to the date of original sentencing.  So it reaffirms those numbers."

## B.  Analysis

When resentencing occurs, the trial court is required to "calculate [all] *actual time* the defendant has already served and credit that time against the 'subsequent sentence.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23; § 2900.1 ["[w]here a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts"].)

Thereafter, the court must prepare an amended abstract of judgment, and forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation (CDCR).  (See *People v. Saibu* (2011) 191 Cal.App.4th 1005, 1012, citing § 2900.5, subds. (a), (d).)  "The CDCR is [then] responsible for calculating a defendant's postsentence [conduct] credits."  (*People v. Dean* (2024) 99 Cal.App.5th 391, 397.)  Based upon the foregoing, we will remand this matter back to the lower court for a recalculation of Newman's custody credits.

## IV.  The Oral Pronouncement of Judgment, the Minute Order from Newman's Resentencing Hearing, and the Abstract of Judgment Must be Amended

We further conclude that various documents within the record require correction, including:  the reporter's transcripts from the oral pronouncement of judgment, the minute order from Newman's resentencing hearing, and the abstract of judgment.

Newman's sentence on counts 2 through 5 was stayed pursuant to section 654, and his conviction on count 6 was reversed in 2011.  Because Newman stands convicted of five felony counts, the reporter's transcript from the trial court's oral pronouncement

13.

must be amended to reflect imposition of a $200 court operations assessment ($40 per conviction) and a $150 ($30 per felony conviction) court facilities assessment. (See e.g., *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865-866 [defendant who plead guilty to nine separate crimes in five different cases was subject to nine court operations assessments, one for each conviction]; and *People v. Calles* (2012) 209 Cal.App.4th 1200, 1226 [the trial court is required to impose a court facilities assessment as to each count for which the defendant is convicted, including those stayed pursuant to section 654]; see also, *People v. Sencion* (2012) 211 Cal.App.4th 480, 484 [because neither the court facilities assessment nor the court operations assessments are punitive, the trial court is required to orally impose them as to each count, regardless of whether punishment on that count is stayed pursuant to section 654].) The minute order and abstract of judgment must also be amended accordingly as well.

With respect to the abstract of judgment filed on April 5, 2024, this document omits Newman's convictions on counts 2 through 5 in Section No. 1, "Defendant was convicted of the commission of the following felonies:". The abstract of judgment reflects, on page 2, that "The sentence as to Count 2, 3, 4, and 5 are stayed pursuant to PC654." However, the abstract of judgment should reflect the convictions that were imposed and stayed in section No. 1.

The abstract of judgment must also be amended to reflect that Newman's resentencing hearing occurred on March 25, 2024, that his sentence was imposed following recall of his sentence pursuant to section 1172.75 (see section No. 14, "EXECUTION OF SENTENCING IMPOSED"), to include the modified assessments imposed by the trial court, and Newman's updated custody credits.

### DISPOSITION

The judgment is affirmed. The matter is remanded back to the lower court for an updated calculation of Newman's custody credits, and amendment of the oral

14.

pronouncement of judgment, the minute order from Newman's resentencing hearing, and the abstract of judgment in accordance with this opinion.


                                                              SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


DE SANTOS, J.